UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **RYAN AMSLER,** *individually and on behalf of a class of similarly situated persons,* <br><br> *Plaintiff,* <br><br> v. <br><br> **FACTORTRUST, INC.,** <br><br> *Defendant.* | Case Number:   8:24-cv-2267 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Ryan Amsler** ("**Mr. Amsler**"), on behalf of himself and all similarly situated individuals, by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **FactorTrust, Inc.** ("**FactorTrust**"), stating as follows:

### DESCRIPTION OF THE CASE

1. This is an action brought by Mr. Amsler against FactorTrust for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

2. FactorTrust is a subsidiary of Trans Union LLC, and itself a Consumer Reporting Agency. FactorTrust specializes in providing credit reports with non-traditional credit data to subprime and deep subprime lenders.

3. Prior to December 2016, the deep sub-prime auto finance company Exeter Finance, LLC ("Exeter") furnished data concerning thousands of consumers to FactorTrust.

4. Per its disclosures to the Securities and Exchange Commission, Exeter charged-off more than 24 cents of every dollar lent in 2016, with half of its loans ending in repossession.

5. The FCRA, § 1681c(a)(4), limits the reporting period for delinquent information, such as a charged-off auto loan, to seven years, which period beings 180 days after the commencement of the delinquency which immediately preceded the charge to profit and loss.

6. Despite this statutory limitation on the reporting of adverse information, FactorTrust failed to implement reasonable procedures to purge tradelines concerning data furnished to it by Exeter after the expiration of the seven-year reporting period.

7. As a result of FactorTrust's conduct, thousands of consumers have outdated, adverse information on consumer reports sold by FactorTrust to their creditors and potential creditors, adversely affecting their ability to obtain and maintain credit.

**JURISDICTION AND VENUE**

8. Subject matter jurisdiction for Plaintiff's FCRA claims arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9. This Court may also exercise diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2).

10. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## PARTIES

11. Mr. Amsler is a natural person residing in the City of Spring Hill, Hernando County, Florida.

12. Mr. Amsler is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

13. FactorTrust is a Delaware limited liability company with a principal business address of Post Office Box 3653, Alpharetta, GA, 30023.

14. FactorTrust's Delaware registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

15. FactorTrust is a *Consumer Reporting Agency* ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

16. In 2012, FactorTrust began maintaining a credit file on Mr. Amsler.

17. In or around March 2013, Exeter furnished information about a car loan Plaintiff obtained in the amount of $19,602 to FactorTrust.

18. By May 2014, Plaintiff's loan was 30 or more days past due.

19. Plaintiff's loan was never again brought current.

20. The car securing Plaintiff's loan was repossessed in July 2015, with the balance on the loan charged off by Exeter in August 2015.

21. As the Exeter loan went 30-days past due in May 2014 and was never again brought current, the "date of first delinquency" ("DOFD") was May 2014.

22. The commencement of this delinquency in May 2014 was the event which preceded the charge-off of the loan.

23. Exeter periodically furnished data to FactorTrust about Plaintiff's loan.

24. FactorTrust was therefore made aware the loan was delinquent in May 2014, or June 2014, when the loan first became 30 days past due.

25. FactorTrust therefore should have ceased reporting Plaintiff's loan as of November 2021.

26. Exeter last furnished information to FactorTrust regarding Plaintiff's loan on December 21, 2016.

27. Exeter reported the loan with a status of "charge-off."

28. FactorTrust thus knew, at the latest, that Plaintiff's loan had been charged to profit and loss by Exeter as of December 21, 2016.

29. Even assuming the "commencement of the delinquency" which resulted in the loan's charge-off began 180 days prior to the date of charge off – and not on the DOFD – FactorTrust should have ceased reporting Plaintiff's loan as of August 2022.

30. As of the filing of this Complaint, FactorTrust continues to include Plaintiff's loan in consumer reports sold regarding Plaintiff.

31. Exeter also furnished information regarding Plaintiff's loan to Equifax, Experian and Trans Union.

32. As with FactorTrust, Exeter last updated its data to Experian on December 21, 2016.

33. The FCRA requires any entity that furnishes information about a delinquent account to provide the CRA, within 90 days of delinquency, the date of first delinquency on the account. *See* § 1681s-2(a)(5)(A).

34. Consistent with this requirement, Exeter reported a DOFD of July 2014 for Plaintiff's loan to each of Equifax, Experian, Trans Union and FactorTrust.

35. Between April 2021 and June 2021, within the seven-year reporting period, Equifax, Experian, Trans Union purged the Exeter tradeline as obsolete.

36. FactorTrust was the lone outlier and did not purge the tradeline *at all*.

37. Records from FactorTrust show it sold at least 15 reports concerning Plaintiff in the last 24 months, all of which included the long-obsolete Exeter tradeline.

38. Unlike its parent company, Trans Union, FactorTrust employs almost no procedures to ensure maximum possible accuracy of reports sold, and lacks procedures to purge stale, obsolete data that is past the reporting period.

39. FactorTrust, a subsidiary of Trans Union, has policies and procedures starkly in contrast to those of its parent company.

40. FactorTrust and Trans Union share financial resources.

41. FactorTrust and Trans Union share employees.

42. FactorTrust and Trans Union share data.

43. FactorTrust and Trans Union share legal counsel.

44. FactorTrust is effectively controlled by Trans Union.

45. Trans Union received identical data from Exeter as FactorTrust.

46. Despite this, Trans Union deleted the Exeter tradeline prior to July 2021.

47. Trans Union enforces Metro 2 reporting guidelines, which are set forth in the *Credit Reporting Resource Guide*, a resource which covers nearly every conceivable credit-reporting situation and question which might arise.

48. Notably, Metro 2 guidelines require data furnishers to report a DOFD immediately upon the reporting of any late payment history.

49. By contrast, FactorTrust requires no such compliance with Metro 2 guidelines.

50. FactorTrust routinely and regularly obtains credit reports from its parent company, Trans Union.

51. FactorTrust was therefore also placed on notice of the DOFD from Trans Union.

52. The FCRA is clear in its requirement that FactorTrust, as a CRA, is required to prepare accurate reports:

Accuracy of Report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *15 U.S.C. §1681e(b).*

53. FactorTrust was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Amsler.

54. FactorTrust's credit reports containing the adverse Exeter tradeline, claiming balances from 2016 are still past-due and owing, have negatively impacted Mr. Amsler's credit score and ability to obtain new credit.

### FactorTrust Fails to Disclose All Information In Credit File

55. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Amsler's request, FactorTrust was required to "clearly and accurately" disclose all information in Mr. Amsler's file at the time of his request, as well as the sources of information relied upon.

56. The failure to include the date an adverse account will be deleted as obsolete inherently renders the disclosure incomplete, inaccurate, and unclear. See, e.g., *Gillespie v. Equifax*, 484 F.3d 938 (7th Cir. 2007).

57. FactorTrust's consumer disclosures ***never*** include DOFDs, purge dates, or other information which would reasonably inform a consumer when the account is going to be deleted from his/her file.

58. Thus, Plaintiff, along with tens of thousands of other consumers who received their consumer disclosure from FactorTrust, have no way of knowing when (or even if) an account is going to be purged due to the running of the reporting period.

59. Likewise, Plaintiff, and all other consumers who received their consumer disclosure from FactorTrust, do not know the reported DOFD of charged-off and collection accounts, and are thus provided no way to verify if the information is accurate.

60. As a result of FactorTrust's failures, Plaintiff and the putative class were deprived of information reasonably required to dispute inaccuracies on their reports.

61. Plaintiff's FactorTrust disclosure showed two adverse tradelines—the aforementioned Exeter loan, and a second account listing Possible Finance as the creditor.

62. Neither adverse tradeline contained any DOFD or other similar information which would indicate when the accounts will be (or in the case of Exeter, *should have been*) purged as obsolete.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as:

**The "Exeter Class":**

**All natural persons within the United States upon whom Exeter furnished information about a charged-off loan to FactorTrust, which loan was reported by FactorTrust at any point in the past five years, despite having been charged off at least 7 years and 181 days prior.**

**The "1681g Class" (together, the "Classes"):**

**All natural persons within the United States who requested a consumer disclosure from FactorTrust within the last two years, and which had one or more adverse tradelines reported which did not disclose a DOFD, purge date, or similar information about when the information would be deleted due to obsolescence.**

64. Excluded from the Classes are the Defendant and any of its officers, directors, and employees.

65. Plaintiff reserves the right to modify or amend the class definitions before the Court determines whether certification is appropriate.

66. **Numerosity.** The Class members are so numerous that joinder of all of them is impractical. Exeter is one of the largest deep sub-prime auto finance companies in the country and made billions of dollars of loans during the relevant time period, much of which was later charged off and reported to FactorTrust. Although the precise number of members in each class is unknown, on information and belief, there are at least 50,000 members of the Exeter Class. There are likely even more in the 1681g Class. The names and addresses of the putative class members are identifiable through documents and business records maintained by the Defendant. The class members may be notified of the pendency of this action by published or mailed notice, or by email, since FactorTrust collects e-mail addresses of consumers and requires a valid email address to receive a consumer disclosure online.

67. **Existence and Predominance of Common Questions of Law and Fact.** There are questions of law and fact that are common to the Class which predominate

over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendant published adverse information to consumer's credit reports after the running of the reporting period; (b) whether the Defendant provided consumer disclosures which lacked DOFDs or similar information; (c) whether the failure to provide consumer disclosures without DOFDs or similar information rendered the disclosures incomplete, inaccurate, and/or unclear; and (d) whether Plaintiff and the Class members were harmed by the Defendant.

68. **Typicality.** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Exeter reported thousands of charged-off accounts in the same time-period as the one appearing on Plaintiff's report. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for members of the Class.

69. **Adequacy of Class Representation.** Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over 1,000 consumer cases under consumer protection statutes, including the FCRA and dozens involving FactorTrust, specifically. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

70. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendant's conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCRA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendant's conduct.

## COUNT I
## FACTORTRUST'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681c(a)(4)

### Exeter Class Only

71. Plaintiff adopts and incorporates Paragraphs 1 – 70 as if fully restated herein.

72. FactorTrust violated **15 U.S.C. § 1681c(a)(4)** when it failed to remove the charged-off Exeter tradeline from Plaintiff's credit file, after the running of the reporting period.

73. FactorTrust's conduct was willful and intentional, or, alternatively, was done with reckless disregard for its duties under the FCRA to purge adverse credit information.

74. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a. An order certifying this case as a class action on behalf of the proposed Exeter Class under Fed. R. Civ. P. 23 and appointing Plaintiff and the undersigned counsel to represent same;

b. An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

e. Such other relief that this Court deems just and proper.

## COUNT II
## FACTORTRUST'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681e(b)

**Exeter Class Only**

75. Plaintiff adopts and incorporates Paragraphs 1 – 70 as if fully restated herein.

76. FactorTrust violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Plaintiff when FactorTrust sold reports which included an Exeter loan with a DOFD of 2014, which loan was charged off in August 2015, despite the running of the seven-year reporting period.

77. FactorTrust has been sued before for including tradelines well past the end of the reporting period and is thus aware its procedures are flawed.

78. Moreover, the deletion of information after the running of the reporting period is one of the hallmarks of the FCRA and something FactorTrust should be keenly aware of at all times.

79. FactorTrust's conduct was willful and intentional, or, alternatively, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Plaintiff and the Exeter Class.

80. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a. An order certifying this case as a class action on behalf of the proposed Exeter Class under Fed. R. Civ. P. 23, appointing Plaintiff and the undersigned counsel of record to represent same;

b. An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

e. Such other relief that this Court deems just and proper.

## COUNT III
## FACTORTRUST'S WILLFUL VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681g(a)(1)

### 1681g Class Only

81. Plaintiff adopts and incorporates Paragraphs 1 – 70 as if fully restated herein.

82. FactorTrust violated **15 U.S.C. § 1681g(a)(1)** when responding to Plaintiff's request for his consumer disclosure when it failed to clearly and accurately disclose to Plaintiff, a consumer, *all* of the information in his file at the time of the request. Specifically, FactorTrust disclosed two adverse tradelines without also disclosing their reported DOFD, or any other similar information which would

indicate when the adverse information would be removed from Plaintiff's credit file due to the running of the reporting period.

83. The decision to *not* disclose readily-available information is inherently a willful act.

84. Trans Union, the parent entity which shares many employees with FactorTrust, includes such information it its disclosures to consumers.

85. Accordingly, FactorTrust is liable, pursuant to 15 U.S.C. § 1681n, for statutory damages of $1,000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a. An order certifying this case as a class action on behalf of the proposed Disclosure Class under Fed. R. Civ. P. 23, appointing Plaintiff and the undersigned counsel of record to represent same;

b. An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

e. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Amsler hereby demands a jury trial on all issues so triable.

Respectfully submitted on September 27, 2024, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
Lead Counsel for Plaintiff

/s/ *Christian E. Cok*
Christian E. Cok, Esq.
Florida Bar Number: 1032167

2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: (813) 321-2349
CCok@SeraphLegal.com
*Counsel for Plaintiff*